Kevin Lamont SHEPPARD, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civil Action No. AW–07–923.

United States District Court,
D. Maryland,
Southern Division.

March 13, 2008.

David Mark Nester, Law Offices of David M. Nester, Washington, DC, for Plaintiff.

Alex S. Gordon, Office of the United States Attorney, Baltimore, MD, for Defendant.

## *MEMORANDUM OPINION*

ALEXANDER WILLIAMS, JR., District Judge.

Plaintiff Kevin Lamont Sheppard ("Plaintiff") brings this action against the United States of America ("Defendant"), claiming negligence pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* ("FTCA"). Currently pending before the Court is Defendant's Motion to Dismiss for Lack of Jurisdiction or, in the

Alternative, for Summary Judgment (Doc. No. 17). The Court has reviewed the entire record, as well as the Pleadings and Exhibits with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2008). For the reasons stated below, the Court will DENY Defendant's motion.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant. On August 12, 1996, Judge Royce Lamberth of the United States District Court for the District of Columbia sentenced Plaintiff to 121 months of incarceration in federal prison in Leavenworth, Kansas. On December 12, 2002, Judge Lamberth granted the request of the United States Attorney for the District of Columbia to reduce Plaintiff's sentence to time served, and, thus, ordered Plaintiff's release. Plaintiff, however, was not released from custody until October 7, 2003, approximately ten months after Judge Lamberth ordered Plaintiff's release.

On May 8, 2006, Plaintiff filed this action in the United States District Court for the District of Columbia, alleging two counts: Count I—the Bureau of Prisons ("BOP") had caused his unlawful imprisonment through negligence; and Count II—the United States Marshalls Service ("USMS") was negligent in delivering and ensuring Plaintiff's early release as ordered by Judge Lamberth. The United States Attorney responded to Plaintiff's complaint with a Motion to Dismiss or, in the alternative, to transfer venue to this Court or to the District of Kansas. On April 12, 2007,

Judge Reggie Walton of the United States District Court for the District of Columbia dismissed Plaintiff's claim against the USMS, and transferred Plaintiff's claim against the BOP to this Court.

## STANDARD OF REVIEW

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction [1]

A motion to dismiss for lack of subject matter jurisdiction, made pursuant to Federal Rule of Civil Procedure 12(b)(1), must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lafayette Fed. Credit Union v. United States*, 76 F.Supp.2d 645, 649 (D.Md.1999). The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. Of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir.1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991)). When a defendant challenges subject matter jurisdiction pursuant to Rule 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647. A Rule 12(b)(1) motion to dismiss will be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768.

---

1. Defendant moves the Court to dismiss for lack of subject matter jurisdiction on the grounds that Plaintiff's negligence claim is really a claim for false imprisonment. Thus, Defendant argues that the Court does not have subject matter jurisdiction to hear this matter under the Federal Torts Claims Act

("FTCA") because the government retains immunity from suits predicated on false imprisonment, where the false imprisonment does not result from the actions of law enforcement officers, as defined within 28 U.S.C. § 2680.

## B. *Motion for Summary Judgment*

Under the Federal Rules of Civil Procedure, summary judgment is appropriate only if there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When ruling on a motion for summary judgment, the court must view the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party discharges its burden by showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. When faced with a motion for summary judgment, Rule 56(e) requires the non-moving party "to go beyond the pleadings" and show the existence of a genuine issue for trial, by way of affidavits, deposition testimony, or answers to interrogatories. *Id.* at 324, 106 S.Ct. 2548; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*,

152 F.3d 326, 330–31 (4th Cir.1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985).

## DISCUSSION

### I. Plaintiff's Claim under the FTCA

■ The United States argues that Plaintiff's negligence claim is truly one of false imprisonment, and, consequently, argues that this Court lacks subject matter jurisdiction under the FTCA, 28 U.S.C. § 1346.

The FTCA gives individuals a right of action to recover damages resulting from government torts. 28 U.S.C. § 1346(b)(1). While the FTCA waives the United States' sovereign immunity for certain torts, the act allows the government to retain immunity from suits predicated upon "[a]ny claim arising out of ... false imprisonment...." *Id.* at §. 2680(h).[2]

This Court must decide whether Plaintiff's negligence claim against the BOP for Plaintiff's illegal detention for over nine months actually arises out of false imprisonment for purposes of the FTCA.[3] There is very little Fourth Circuit pronouncement on this issue; therefore, the Court will refer to other courts, particularly the Ninth Circuit, for guidance.

Although Plaintiff's claim is dressed as a claim of negligence, courts have "look[ed] beyond the labels used to determine whether a proposed claim is barred [under

**2.** This exception, however, is itself subject to a proviso, which states that sovereign immunity is waived if the false imprisonment is committed by an "investigative or law enforcement officer of the United States Government." 28 U.S.C. § 2680(h).

**3.** The Restatement (Second) of Torts describes "false imprisonment" as follows:
(1) An actor is subject to liability to another for false imprisonment if
(a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and

(b) his act directly or indirectly results in such a confinement of the other, and
(c) the other is conscious of the confinement or is harmed by it.
(2) An act which is not done with the intention stated in Subsection (1, a) does not make the actor liable to the other for a merely transitory or otherwise harmless confinement, although the act involves an unreasonable risk of imposing it and therefore would be negligent or reckless if the risk threatened bodily harm.
Restatement (Second) of Torts § 35 (1965).

§ 2680(h) ]." *Snow–Erlin v. United States*, 470 F.3d 804, 808 (9th Cir.2006). The Ninth Circuit has also held that they "look beyond [the party's] characterization to the conduct on which the claim is based," and have found that "if the gravamen of Plaintiff's complaint is a claim for an excluded tort under § 2680(h), then the claim is barred." *Id.*; *see also Sheehan v. United States*, 896 F.2d 1168, 1171 (9th Cir.1990) ("Regardless of the plaintiff's characterization of the cause of action, § 2680(h) bars suit for claims based on conduct which constitutes one of the excepted torts. . . ."). Moreover, if the substance of Plaintiff's claim "falls within the rubric of false imprisonment, then the Court lacks subject matter jurisdiction" over Plaintiff's claim. *Maurello v. United States*, 111 F.Supp.2d 475, 481 (D.N.J. 2000).

Defendant cites a number of cases to support its argument that any prolonged incarceration by the government has been seen by other courts as false imprisonment, and not a claim of negligence. The Court, however, must note that it is not persuaded by many of the cases cited by Defendants, as the plaintiffs in some of those cases, unlike Plaintiff Sheppard in the instant action, actually plead the elements of or specific facts supporting claims that are barred by the FTCA, and attempted to attach a different label to the claims. *See, e.g., Talbert v. United States*, 932 F.2d 1064, 1065–67 (4th Cir.1991) (finding that although the plaintiff brought a claim against the government under negligence, the gravamen of the plaintiff's claim rested on libel, a tort exempted under § 2680(h), where Talbert's complaint encompassed all of the elements of libel); *see also Blitz v. Boog*, 328 F.2d 596, 598–99 (2d Cir.1964) (dismissing the plaintiff's negligence claim because the substance of the claim was essentially one of false imprisonment when the government deliberately and forcibly restrained the plaintiff within the hospital).

The Court, however, finds the Ninth Circuit case of *Snow–Erlin*, cited by Defendant, to be very persuasive.[4] In *Snow–Erlin*, the plaintiff brought a FTCA claim alleging negligence in a miscalculation of her late husband's release date, which resulted in the plaintiff's late husband being released ten months after his scheduled release date. The Ninth Circuit rejected the plaintiff's argument that the defendant's negligently handled her late husband's prison records, reasoning that the plaintiff could not use negligence to sidestep § 2680(h)'s bar on false imprisonment. *Id.* at 807. The Court held that the only harm alleged was that the government kept the late husband imprisoned for 311 days too long. *Id.* at 808. Therefore, the Ninth Circuit, looking beyond the plaintiff's label and characterization of the negligence claim, and instead focusing on the conduct on which the claim was based, found that the gravamen of the plaintiff's complaint was a claim for false imprisonment. The facts in *Snow–Erlin* bear a strong resemblance to the instant action and lend support to Defendant's argument.[5]

---

**4.** This is Defendant's strongest and most factually applicable case.

**5.** While Plaintiff distinguishes nearly every case cited by Defendant, Plaintiff fails to distinguish *Snow–Erlin* from the instant action. Apart from merely pointing out that the court in *Snow–Erlin* did not address the "investigative or law enforcement" issue, which will be discussed in detail below, Plaintiff did not provide the Court with any persuasive reasoning as to why *Snow–Erlin* is inapplicable to this action. Moreover, the Court notes that while the majority of the cases cited within the parties' briefs are ones readily distinguishable from this case, the Plaintiff has not cited, nor is the Court aware of, any cases that affirmatively support Plaintiff's position.

Defendant also rely on *Maurello v. United States,* 111 F.Supp.2d 475 (D.N.J. 2000), in which the plaintiff filed a FTCA claim against the government for the BOP employees' negligent delay in enrolling the plaintiff in a drug treatment program, and subsequently delaying his early release by 51 days. *Id.* at 482. The Court held that the substance of the plaintiff's complaint appeared to be that he was falsely imprisoned and noted, "[i]t is, of course, the substance of the claim, and not the language used in stating it, that controls." *Id.* at 481.

To rebut Defendant's argument and to support his negligence claim, Plaintiff argues that one is required to show deliberate action to restrain ones freedom to plead false imprisonment within the context of an incarceration. Plaintiff relies on Restatement (Second) of Torts, § 45, noting that false imprisonment in an incarceration requires, "refusal to [release] with the intention of confining the [inmate]." Plaintiff contends that he has not alleged any intentional conduct on the part of the Defendant, and, thus, without the allegations of intentional conduct, it would be improper to characterize Plaintiff's claims as those of false imprisonment under the FTCA.

While the Court recognizes that Plaintiff has labeled and dressed his claim as one arising out of negligence, the Court must note that case law suggests that the Court is obligated to look beyond those labels and characterizations and instead look to the substance of the claim, the conduct on which such claim is based, and the gravamen of the complaint. *See Snow–Erlin,* 470 F.3d at 808; *Sheehan,* 896 F.2d at 1171; *Maurello,* 111 F.Supp.2d at 481. Similar to the Court *in Snow–Erlin,* it appears to this Court that, despite representing the claim as one for negligence, the gravamen of Plaintiff's complaint is a claim for false imprisonment, as the specif-

ic harm Plaintiff has alleged here is that he was detained for a period in excess of nine months. In *Snow–Erlin,* the plaintiff's complaint alleged, among other things, that Erlin "spent three hundred-eleven (311) days in Federal custody . . . in violation of his rights pursuant to the negligent acts and omissions of the defendant[;]" thus, "Defendants were negligent and breached their duty to plaintiff by negligently and wrongfully seizing and incarcerating him." *Snow–Erlin,* 470 F.3d at 806–07. Here, Plaintiff's complaint alleges, "Defendant owed a duty of care to Plaintiff to ensure that he was not detained for any period in excess of that authorized by law or court order. . . ." Plaintiff also alleged that "[a]s a direct and proximate result of Defendant's negligent and gross negligent acts and/or omissions, Plaintiff was illegally detained for a period in excess of nine (9) months, he sustained severe suffering and mental anguish and a substantial loss of income and was otherwise damaged."

Just as the Ninth Circuit held in *Snow–Erlin,* this Court notes that Plaintiff "cannot sidestep the FTCA's exclusion of false imprisonment claims by suing for the damage of false imprisonment under the label of negligence." *Snow–Erlin,* 470 F.3d at 809. Here, Plaintiff's cause of action arises out of the BOP not releasing him when he was scheduled to be released. Although Plaintiff has not alleged that the BOP employees intentionally detained him, the Court, after examining the substance of Plaintiff's claim, is convinced that the gravamen of the complaint is a claim for false imprisonment. Therefore, in looking beyond the veil that Plaintiff has placed on his claim, the Court will recast the claim as one of false imprisonment, as the Court finds that the complaint sounds like, looks like, and screams false imprisonment.

## II. "Investigative or Law Enforcement Officers" Exception

Having found that Plaintiffs's claim is indeed a false imprisonment claim under the FTCA, the Court will only have subject matter jurisdiction over this claim if the Court determines that the BOP employees involved in Plaintiff's excessive detention, are considered "investigative or law enforcement officers" under § 2680(h). While the FTCA allows the government to retain immunity from suits predicated upon claims arising out of false imprisonment, the government's sovereign immunity is nevertheless waived if the Court finds that Plaintiff's false imprisonment is committed by an "investigative or law enforcement officer."

Defendant argues that Plaintiff's false imprisonment did not result from the actions of "investigative or law enforcement officers" within the meaning of § 2680(h). The FTCA defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law." 28 U.S.C. § 2680(h). Defendant suggests that for an act to be considered one of an "investigative or law enforcement officer," the tortious conduct must occur in the course of the a search, seizure, or arrest, noting that Plaintiff's case was no longer one in which a search, seizure, or arrest was necessary because Plaintiff had already been convicted, sentenced, and incarcerated.

In support of this argument, Defendant relies on *Pooler v. United States*, 787 F.2d 868, 872 (3rd Cir.1986), in which the Third Circuit read the § 2680(h) proviso to waive sovereign immunity for intentional torts committed by federal law enforcement officers only when such torts occur during the course of a search, seizure, or arrest. Plaintiff notes, and the Court also recognizes, that the Third Circuit's narrow interpretation has not been adopted by a majority of the federal courts. *See Crow v. United States*, 659 F.Supp. 556, 570–71 (D.Kan.1987) (declining to accept the Third Circuit's interpretation and finding that the § 2680(h) proviso applied to the postal inspectors' investigation of mail fraud, where the plaintiff's claim arose out of an investigation, and not a search, seizure, or arrest by the officer); *Harris v. United States*, 677 F.Supp. 403, 405 (W.D.N.C. 1988) (noting that Congress did not intend to limit the § 2680(h) proviso as the Third Circuit limited it and stating, instead, that the proviso "provided that the Government waives sovereign immunity against liability for certain intentional torts committed by any agents who have the authority to execute searches, seize evidence, or make arrests."); *see also Sami v. United States*, 617 F.2d 755, 763–64 (D.C.Cir.1979) (finding activity of officers who were not actually engaged in any search, seizure, or arrest to be within the Section 2680(h) proviso). The Court also notes that this particular issue has not been addressed by the Fourth Circuit nor has it been addressed by this District Court.

■ Like the courts mentioned above, this Court declines to follow the very narrow interpretation of the § 2680(h) proviso. As previously stated, the FTCA defines an "investigative or law enforcement officer" as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of federal law." 28 U.S.C. § 2680(h). Based on the Court's reading of the statute, the Court is not convinced that Congress intended the proviso to be read so narrowly as to mean that sovereign immunity is waived for those intentional torts under the statute committed by federal law enforcement officers only when such torts occur during the course of a search, seizure, or arrest. The

Court agrees with the *Harris* court, as it appears that Congress intended to waive the government's immunity where "certain intentional torts were committed by any of its *agents who have the authority to* execute searches, seize evidence, or make arrests." [6]  *Harris,* 677 F.Supp. at 405 (emphasis added). Thus, the Court finds that the proviso in § 2680(h) that waives sovereign immunity for intentional torts committed by federal law enforcement officers is not restricted to those torts occurring during the course of a search, seizure, or arrest.

Moreover, the Court must generally note that BOP employees have been considered as "investigative or law enforcement officers" within the meaning of § 2680(h). *See Hernandez v. Lattimore,* 612 F.2d 61, 64 (2d Cir.1979) (finding that federal correctional officers "fall within the definition of "investigative or law enforcement officers" by virtue of 18 U.S.C. § 3050, which empowers officers or employees of the Bureau of Prisons of the Department of Justice to make arrests."); *United States v. Sababu,* 891 F.2d 1308, 1328–1329 (7th Cir.1989) (holding that prison officials are "investigative or law enforcement officers"); *see also Picariello v. Fenton,* 491 F.Supp. 1026, 1037 (M.D.Pa. 1980) (where the United States conceded that "employees of the Federal Bureau of Prisons involved in the [processing of prisoners] were *investigative or law enforcement officers*" for purposes of 28 U.S.C. § 2680(h).).[7]

■ Plaintiff's complaint, while not specifying the particular roles of the BOP agents allegedly involved, refers generally to "employees of the Bureau of Prisons." Defendant contends that the tasks complained of in Plaintiff's complaint are administrative activities carried out by personnel, and thus, argues that the BOP personnel who were allegedly responsible for the continued confinement of Plaintiff during his false imprisonment were not "investigative or law enforcement officers." To support its argument that the BOP personnel or administrators are not investigative or law enforcement officers, Defendant relies on *Puccini v. United States,*

---

**6.** The Senate report on the § 2680(h) proviso indicates that the proviso was enacted to "provid[e] a remedy against the Federal Government for innocent victims of Federal law enforcement abuses." S.Rep. No. 588, 93d Cong., 2d Sess. 3 (1973), *reprinted in* 1974 U.S.Code Cong. & Admin. News 2789, 2792 (1974) (*"Senate Report"*). The impetus for this section was the "Colesville raids," incidents in which federal agents engaged in abusive, illegal, and unconstitutional "no-knock" raids. *Id.* at 2790. However, the Senate Report also states that "[t]he effect of this provision is to deprive the Federal Government of the defense of sovereign immunity in cases in which Federal law enforcement agents [act] within the scope of their employment, or under color of Federal law. . . ." *Id.* at 2791. This language indicates that the federal government's waiver of its sovereign immunity might reach more than federal law enforcement abuses and might apply whenever investigative or law enforcement officers commit an enumerated tort while acting with-

in the scope of their employment. This language also suggests that Congress did not place a limitation on "the particular context in which the tort is committed." *See Harris,* 677 F.Supp. at 405.

**7.** Although unpublished, there are also other cases that state that BOP officers are considered "investigative or law enforcement officers." *See, e.g., Dufort v. Burgos,* 2005 WL 2660384, 2005 U.S. Dist. LEXIS 23902 (D.N.Y.2005) (noting that "the Supreme Court has interpreted § 2680(h) to include Bureau of Prisons officers."); *Farmer v. Jacobsen,* 1998 WL 957237, 1998 U.S. Dist. LEXIS 20846 (D.Minn.1998) (concluding that BOP employees are "law enforcement officers"); *Sarvis v. United States,* 2000 WL 1568230, 2000 U.S.App. LEXIS 26618 (2d Cir.2000) ("Because an 'officer or employee of the Bureau of Prisons may make arrests,' 18 U.S.C. § 3050, defendants in this action are at least arguably subject to the proviso.").

978 F.Supp. 760, 761 (D.Ill.1997), in which the court granted the federal defendants' motion for summary judgment under the FTCA claim where the "conduct complained of was that of persons acting as prison administrators, not investigative or law enforcement officers."

While the Court believes that BOP officers and employees are generally included in § 2680(h)'s definition of "investigative and law enforcement officers," the Court cannot, at this time, make a final determination as to whether the BOP employees involved in this action actually fall within that definition, where the facts are unclear, and not yet developed, as to the role and duties of these employees. Therefore, the Court will allow the parties to conduct discovery on this issue, in an effort to determine the specific BOP employees who were allegedly responsible for the continued confinement of Plaintiff during his false imprisonment and those involved in the processing and supervision of Plaintiff, as well as the titles, duties, and responsibilities of these employees. Accordingly, the Court will deny Defendant's motion for summary judgment and will issue a Scheduling Order shortly.

## CONCLUSION

For the reasons stated above, the Court will DENY Defendant's Motion to Dismiss for Lack of Jurisdiction or, in the Alternative, for Summary Judgment. An Order consistent with this opinion will follow.